WILLIAM SOBEL *vs.* SIGNAL SHOE COMPANY.

Suffolk. March 6, 1933. — May 24, 1934.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Contract*, Construction, Of employment. *Evidence*, Extrinsic affecting writing.

A contract in writing of employment of a salesman by a corporation for two years beginning January 1, 1931, provided that, beyond a stated salary, he should receive at the end of fifteen months extra compensation in the form of a credit of five per cent of the net earnings "for the year 1931" after certain deductions, "as shown on the annual certificate of condition filed at the State House, or $2,500 whichever is the greater amount"; that either party might terminate the contract at will at any time; and that, if the employment was terminated by the corporation, it should pay to him "an amount equal to the credits at that time accumulated to his account, in cash," but if it was terminated by the salesman, the corporation should pay him "one-half of said accumulated credits, in cash." The employment was terminated in November, 1931, and in that month the salesman brought an action for the compensation beyond the stated salary. *Held*, that, irrespective of who terminated the contract,

(1) Under the contract the amount of the salesman's extra compensation was to be determined on the basis of the net earnings for a business year which corresponded to the calendar year;

(2) There was nothing in the contract to indicate that the corporation was required to make an accounting of its net earnings for any period less than one year or that the additional compensation was to be distributed ratably over the business year;

(3) The contract did not provide for crediting the salesman with any amount until after the end of the business year;

(4) Such a construction of the contract did not reach so unreasonable a result as to preclude its adoption;

(5) No "credits" having "accumulated" to the salesman's "account" before the termination of the contract, he was not entitled to any such extra compensation.

In an action by the salesman against the corporation for extra compensation under the contract in writing above described, it was *held*, that the contract was not ambiguous and that evidence, offered by the plaintiff at the trial, of negotiations and discussions between the plaintiff and the president of the defendant corporation previous to or contemporaneous with the making of the contract properly was excluded.

CONTRACT. Writ dated November 19, 1931.

In the Superior Court, the action was tried before *Donnelly*, J. Material evidence is described in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*Lee M. Friedman,* (*F. L. Kozol & L. Hamburger* with him,) for the plaintiff.

*J. C. Coughlin & J. V. Phelan,* for the defendant, submitted a brief.

FIELD, J. This is an action to recover under a written contract dated January 31, 1931, additional compensation as a salesman for the period from January 1, 1931, to November 9, 1931, when, as the plaintiff alleges, his employment by the defendant was terminated by the defendant. The writ is dated November 19, 1931. A verdict for the defendant was directed. The plaintiff excepted to the direction of the verdict and to the exclusion of evidence.

The written contract provided for the employment of the plaintiff by the defendant "as salesman for a period of two years commencing January 1, 1931, at a salary of One Hundred Twenty-five Dollars ($125.00) per week." Material portions of the written contract dealing with addi-

tional compensation are as follows: "On or before April 1, 1932, said Company shall, in addition to said salary, credit said Sobel with five per cent (5%) of the net earnings of the Company for the year 1931, after deduction for reserves for depreciation, etc., as shown on the annual certificate of condition filed at the State House, or Twenty-five Hundred Dollars ($2500.00) whichever is the greater amount. Said additional credit shall not, however, be paid in cash, except as hereinafter provided, but shall be credited to said Sobel's account, to be applied against purchases of stock in said Company, as hereinafter recited. [There was a similar provision for crediting ten per cent of net earnings on or before April 1, 1933.] . . . When said credits equal an amount sufficient to purchase five per cent (5%) of the Common stock of said Company at One Hundred Sixty Dollars ($160.00) per share, said Company agrees that it will sell or cause to be sold to said Sobel, to be paid for by the cancellation of said credits, five per cent (5%) of its common stock, neither more nor less. Nothing herein contained shall prevent said Signal Shoe Company from discharging said Sobel, or shall prevent said Sobel from leaving the employ of said Company at any time, with or without cause; but in the event that said Sobel's employment is to be terminated by said Company, said Company shall pay to said Sobel an amount equal to the credits at that time accumulated to his account, in cash; but if said Sobel shall leave the employ of said Company of his own volition, then said Company shall pay to said Sobel one-half of said accumulated credits, in cash."

There was conflicting evidence as to the length of time the plaintiff worked for the defendant and as to who terminated the employment. This action, however, was brought before the end of the first year of the plaintiff's employment under the contract.

The verdict was directed rightly. Whether the plaintiff or the defendant terminated the plaintiff's employment, it was, so far as appears, terminated rightfully. The terms of the written agreement with reference to additional compensation are not ambiguous. They clearly contemplate

that the amount of the plaintiff's compensation shall be determined on the basis of the net earnings of a business year which corresponds to the calendar year. The computation is to be based on an annual State return. There is nothing in the instrument to indicate that the defendant is expected or required to make an accounting of its net earnings for any period less than one year or that the additional compensation, whether an amount which is a percentage of the net earnings or the alternative amount of $2,500, is to be distributed ratably over the business year. And there is no provision for crediting the plaintiff with any amount until after the end of a business year. This construction of the language does not reach so unreasonable a result as to preclude its adoption. Under the written contract, so construed, no "credits" had "accumulated" to the plaintiff's "account" before the termination of his employment by the defendant. See, for somewhat similar cases, *Allcott* v. *Boston Steam Flour Mill Co.* 9 Cush. 376; *Thompson* v. *Saco Water Power Co.* 114 Mass. 159.

Since the terms of the written agreement are not ambiguous, the judge properly excluded evidence offered by the plaintiff of previous negotiations and contemporaneous discussions between the plaintiff and the president of the defendant corporation. *Snider* v. *Deban,* 249 Mass. 59, 61.

*Exceptions overruled.*